## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 07-1130 (CKK) |
| DESIGN TECHNOLOGIES | ) ) | |
| and | ) ) | |
| VINCENT ZAPPOLA, individually and d/b/a Design Technologies | ) ) ) | |
| Defendants. | ) | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), respectfully moves this Court for entry of judgment by default against Defendants, Design Technologies ("Company") and Vincent Zappola ("Individual Defendant" and together with Company, "Defendants"), jointly and severally, in the amount of $127,521.40, which includes contributions, interest, late fees, liquidated damages and attorneys' fees and costs incurred by the Pension Fund pursuant to 29 U.S.C. §185(a) and 1132(g)(2)(A) through (D), and for injunctive relief.

In support of this Motion, Plaintiff relies upon the allegations in its Complaint, the Declaration of Thomas Montemore[1] and the Declaration of Philip A. Lozano.[2]

The grounds for this Motion are as follows:

---

[1]  The Declaration of Thomas Montemore ("Montemore Declaration") is attached to this Motion as Exhibit 1. The exhibit referenced in the Montemore Declaration is attached as Exhibit 2.

[2]  The Declaration of Philip A. Lozano ("Lozano Declaration") is attached to this Motion as Exhibit 3. The exhibits referenced in the Lozano Declaration are attached to this Motion as Exhibits 4-6.

188271-1

1.      Prior to the commencement of this action, the Plaintiff attempted to resolve this delinquency in an amicable manner.

2.      The requested payments were not received and the Complaint in this matter was filed on June 25, 2007.  The Complaint was served on Defendants on August 27, 2007 as appears from the Affidavits of Service duly filed with the Court.

3.      No Answer to the Complaint has been filed by the Defendants.

4.      On September 17, 2007, Plaintiff filed a Request to Clerk to Enter Default against the Defendants pursuant to Fed. R Civ. P. 55(a). A copy was sent via first-class mail, postage prepaid, to the Defendants.

5.      On September 18, 2007, the Clerk of the Court entered default against all Defendants.

6.      Defendants are neither infants nor incompetent people and the Individual Defendant is not in the military service.

**WHEREFORE**, Plaintiff seeks the following relief:

(a)      Judgment entered as set forth in the proposed Order and Judgment attached to this Motion; Such other and further relief as the Court deems just, necessary and appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.
 /s/ Kent Cprek
KENT CPREK
Bar No. 478231
PHILIP A. LOZANO*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0669
Attorneys for the Fund

Date: November 7, 2007
*Application for Pro Hac Admission of Philip A. Lozano shall be made at the appropriate time.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 07-1130 |
| v. | ) ) | |
| DESIGN TECHNOLOGIES | ) ) | |
| and | ) ) | |
| VINCENT ZAPPOLA, individually and d/b/a Design Technologies | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANTS.

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), by its legal counsel, submits this Memorandum of Law in Support of its Motion for Judgment by Default.[3]

The Plaintiff served its Complaint on Defendants, Design Technologies ("Company") and Vincent Zappola ("Individual Defendant" and together with Company, "Defendants"), on August 27, 2007. To date, Defendants have failed to answer the Complaint or otherwise defend this action. On September 17, 2007, Plaintiff filed a Request For Entry of Default against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The default was entered against all defendants on or about September 18, 2007.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise

---

[3]    Attached to the Motion accompanying this Memorandum are the Declarations of Thomas Montemore ("Montemore Declaration") and Philip A. Lozano ("Lozano Declaration"). Also attached is a proposed form of Default Judgment.

defend, the Pension Fund is entitled to judgment by default against Defendants without a

hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983);

Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, such as those here,

fail to respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d

Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of

fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978)

(allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent

conveyance or voidable preference).

Defendants were and have been party to collective bargaining agreements (singly or

jointly "Labor Contracts") with the various local unions and district councils affiliated with the

International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union").

See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, true and correct copies of relevant

provisions from the Labor Contracts. Under the Labor Contract, Defendants are required to remit

fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration,

¶¶6-7; Exhibit 2, Labor Contracts. The failure to pay these fringe benefit contributions and other

amounts results in a delinquency to the Plaintiff.


## ARGUMENT

**A.    ENTRY OF JUDGMENT AGAINST DEFENDANTS, JOINTLY AND
SEVERALLY, FOR UNPAID CONTRIBUTIONS, INTEREST,
LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS
ENTIRELY APPROPRIATE**

Defendants are parties to one or more Labor Contracts with the Union. See, Exhibit 1,

Montemore Declaration, ¶6; Exhibit 2, Labor Contracts. The Labor Contracts provide for the

payment of contributions to the Pension Fund for time worked by or paid to employees who

perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶7;

Exhibit 2, Labor Contracts. Failure to make these contributions, or to submit either incorrect or

late remittance reports, results in a delinquency to the Pension Fund. Ibid. Under the Labor

Contracts, the Pension Fund also has the right to audit the signatory's payroll books and related

records to determine that all of the required contributions have been paid. See, Exhibit 1,

Montemore Declaration, ¶¶6,13; Complaint, Exh. 1; Exh.2, Labor Contracts.  Finally, under the

terms of the Labor Contracts, the employer agrees to be bound by the Agreement and

Declaration of Trust of the Pension Fund ("Trust Agreement," attached as Exhibit 1 to the

Complaint filed in this matter and incorporated by reference) and the International Painters and

Allied Trades Industry Pension Plan ("Plan," attached as Exhibit 2 to the Complaint filed in this

matter and incorporated by reference) and by all amendments thereto and actions taken by the

trustees of the Pension Fund. See, Complaint, ¶¶ 8-9; Exhibit 1, Montemore Declaration, ¶6;

Exhibit 2, Labor Contracts.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall … make contributions in accordance
> with … such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

A.    the unpaid contributions;

B.    interest on the unpaid contributions;[4]

C.    an amount equal to the greater of:

    (i)    interest on the unpaid contributions; or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (a);[5]

D.    reasonable attorneys' fees and costs of the action, to be paid by the Defendants; and

E.    such other legal or equitable relief as the court deems appropriate.

Company has defaulted on the Agreement and failed to submit contributions for the period May 2005 through February 2007 and has failed to submit contributions and remittance reports for the period March 2007 through April 2007. See, Exhibit 1, Montemore Declaration, ¶8-9. As a result, Plaintiff is entitled to judgment in at least the amount of $127,521.40.

1.    **Defendants owe contributions in at least the amount of $68,372.37**

Defendants have failed to submit the required contributions for the period of May 2005 through February 2007 in the total amount of $63,107.43. See Exhibit 1, Montemore Declaration, ¶9. Defendants have also failed to submit contributions for the period March 2007 through April 2007 in the estimated amount of $5,264.94. See Exhibit 1, Montemore Declaration, ¶9. This amount is estimated because the Defendants have failed to submit the

---

[4]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

[5]    ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

contractually-required remittance reports. The estimated contributions are calculated by the

Pension Fund based on the average of the last three months of remittance reports filed by

Company.  See, Exhibit 1, Montemore Declaration, ¶9.  Therefore, Defendants owe a total of at

least $68,372.37 in contributions.

### 2.    Defendants owe interest in the amount of $7,034.39

The rules and regulations as set forth in §10.12(b)(2) of the Plan set the interest rate on

delinquent contributions according to the Internal Revenue Service rate for delinquent taxes.

Interest accruing through September 30, 2007 on Defendants' delinquent contributions totals

$7,034.39. See, Exhibit 1, Montemore Declaration, ¶10; 29 U.S.C. §1132(g)(2)(B); 26 U.S.C.

§6621. Interest will continue to accrue until the amounts are paid.

### 3.    Defendant owes late charges in the amount of $3,431.88

ERISA and §10.12 of the Plan allow other legal or equitable relief as the Court deems

appropriate.  Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides

for "late charges" in the form of interest on contributions paid more than twenty days after the

due date and prior to litigation.   Defendants owe $3,431.88 in late charges for the period of

September 2004 through April 2005.  Montemore Declaration, ¶11.  See also, International

Brotherhood of Painters and Allied Trades International Union and Industry Pension Fund v.

Claser Painting Corporation, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

### 4.    Defendants owe liquidated damages in the amount of $16,804.77

ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated

damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of

unpaid contributions due at the commencement of the lawsuit and those which become

delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust

Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. The total amount of liquidated damages is $16,804.77. The amount of liquidated damages is greater than the interest due ($7,034.39). Therefore, Defendants owes $16,804.77 in liquidated damages. See, Exhibit 1, Montemore Declaration, ¶12; 29 U.S.C. §1132(g)(2)(C).

5.    **Defendants owe attorneys' fees in the amount of $31,877.99**

Plaintiff has incurred $31,877.99 in attorneys' fees and costs in connection with this matter through October 15, 2007[6]. See, Exhibit 3, Lozano Declaration, ¶2; Exhibit 4. See, 29 U.S.C. §1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)). Therefore, Defendants owe $31,877.99 in attorneys' fees and costs.

6.    **The Pension Fund is entitled to injunctive relief**

The failure of Defendants to comply with their contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. The Pension Fund is obligated by express mandates of ERISA and by the documents and

---

[6] Attorney's fees and costs reflect that Company has been habitually delinquent since 2004. The Funds originally filed an ERISA collection action against the Company in November 8, 2004 after efforts to resolve the then outstanding contribution obligation failed. Judgment was entered against Company on May 21, 2005 and transferred to local counsel for collection. Extensive settlement negotiations followed. An agreement was reached on November 21, 2006 which required Company to pay the balance of the delinquency in the amount of $24,454.07 as well as schedule the audit by December 31, 2006. Company paid the balance of the delinquency but again failed to schedule the audit despite the Fund's auditor's repeated attempts to do so. Company's conduct has resulted in the substantial expenditure of attorney's fees and costs by the Funds.

instruments by which it is administered to provide benefits and pension credits to all of

Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b-2(a)(1)

and (2); <u>Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight,</u>

<u>Inc.</u>, 511 F.Supp. 38 (D.Minn. 1980), <u>aff'd</u> <u>sub. nom.</u>, <u>Central States, S.E. & S.W. Areas Pension</u>

<u>Fund v. Jack Cole-Dixie Highway Co., Inc.</u>, 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is

required to provide these benefits and credits regardless of whether Defendants make the

contributions. For example, if employees perform work covered by the collective bargaining

agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits

regardless of whether a signatory employer makes contributions to the Pension Fund. The result

of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the

Pension Fund's resources.

Additionally, where, as here, Defendants fail to remit their contributions, the Pension

Fund loses the income that it would have earned by investing those contributions. Combining

this loss of investment income with the Pension Fund's requirement to continue paying benefits

to Company's employees (as well as to the employees of other signatory contractors) will

eventually affect the actuarial soundness of the Pension Fund as well as deplete the resources

available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of

Defendants' failure to pay their contributions. These losses and added expenses significantly

impair the Pension Fund's ability to continue to provide benefits to not only Company's

employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendants' failure to comply with their contractual and statutory obligations

to the Pension Fund to submit timely, accurate remittance reports and pension contributions each

month, and the irreparable harm which Defendants' malfeasance causes the Pension Fund, the

Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default

judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir.

1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200

(D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640

F.Supp. 223 (D.D.C. 1986).

**B.    COMPANY SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND DEFENDANTS MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is made based upon

information contained in the remittance report, to be filed monthly by each and every signatory

employer. A proper determination of eligibility is not possible if remittance reports are not

submitted or if they contain incorrect information. See, 29 U.S.C. §1132(g)(2)(E) (equitable

relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F.

Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4

EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete,

640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required

contributions and correctly reported hours worked and paid to its employees, the Pension Fund

has the right to review all of the employer's records that relate to its contributory obligation.

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105

S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit

the Pension Fund's auditors to review those records upon request. <u>Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.</u>, 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Labor Contracts and Trust Agreement obligate Defendants to allow the audit. <u>See</u> Exhibit 1, Montemore Declaration, ¶¶6-14; Exhibit 2, Labor Contracts; Complaint, Exhibit I, Art. VI, Sec. 6. The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. <u>DeMarco v. C & L Masonry</u>, 891 F.2d 1236 (6th Cir. 1989). In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. <u>Ibid</u>.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendants' failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendants are correct. <u>See</u> Exhibit 1, Montemore Declaration, at ¶¶13-14. The Company's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Company to produce its records for an audit for all periods in which the Defendants are obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendants for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, therefore, requests that the Court enter a judgment against Defendants, jointly and severally, in the amount of $127,521.40, which includes $31,877.99 in attorneys' fees and

costs, order Defendants to submit the remittance reports and corresponding contributions

together with interest and liquidated damages and order Company to produce its payroll books

and related records for an audit for all periods in which the Company is obligated to make fringe

benefit contributions to the Pension Fund.

In light of the clear statutory intent of ERISA, it is respectfully requested that this Court

grant the Pension Fund the relief requested in the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.
 /s/ Kent Cprek
KENT CPREK
Bar No. 478231
PHILIP A. LOZANO*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0669
Attorneys for the Fund

Date: November 7, 2007


*Application for Pro Hac Admission of Philip A. Lozano shall be made at the appropriate time.

## CERTIFICATE OF SERVICE

I, KENT CPREK, ESQUIRE, state, under penalty of perjury, that the foregoing Motion

for Judgment by Default by the Court pursuant to Federal Rule of Civil Procedure 55(b)(2)

against Defendants was served by mailing same first class mail, postage prepaid, on the date

listed below to:

DESIGN TECHNOLOGIES
888 Huguenot Avenue
Staten Island, NY 10312

And

VINCENT ZAPPOLA
D/B/A DESIGN TECHNOLOGIES
888 Huguenot Avenue
Staten Island, NY 10312

s/  Kent Cprek
Kent Cprek, ESQUIRE

Date: November 7, 2007

**THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED AND IS AVAILABLE
FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM**

188271-1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 07-1130 |
| v. | ) ) | |
| DESIGN TECHNOLOGIES | ) ) | |
| and | ) ) | |
| VINCENT ZAPPOLA, individually and d/b/a Design Technologies | ) ) ) | |
| Defendants. | ) | |

## ORDER AND JUDGMENT BY DEFAULT AGAINST DEFENDANTS

Upon consideration of the Complaint and Plaintiff's Motion for Entry of Judgment by Default, the supporting Memorandum, declarations and attached Exhibits, it appears to the Court that Defendants were served with process and have inexcusably, knowingly and willfully failed to appear, plead or otherwise defend, and the default against said Defendants having been entered, the Court **FINDS**:

A.      Defendants, Design Technologies ("Company") and Vincent Zappola ("Individual Defendant" and together with Company, "Defendants") are bound to collective bargaining agreements requiring them to remit fringe benefit contributions and other sums to Plaintiff.

B.      Defendants have failed to remit to Plaintiff the fringe benefit contributions and other sums required by the collective bargaining agreement.

C.      Individual Defendant is the owner or proprietor of Company, an unincorporated business, and thus, is personally liable for all amounts due to Plaintiff.

188271-1

Consistent with these findings, it is **ORDERED**:

1.    Plaintiff's Motion is Granted.

2.    Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and 29 U.S.C. §1132(g)(2)(A) through (E), judgment is entered in favor of Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Pension Fund" or "Plaintiff"), and against Defendants, jointly and severally, in the amount of $127,521.40, which consists of the following:

(a)    Unpaid contributions in the amount of $68,372.37 for the period May 2005 through April 2007;

(b)    Liquidated damages in the amount of $16,804.77;

(c)    Interest through September 30, 2007 in the amount of $7,034.39. The contribution amount in Paragraph 2(a) shall continue to bear interest as provided in 29 U.S.C. §1132(g)(2)(B) and 26 U.S.C. §6621, as from time to time amended, until the date of actual payment.

(d)    $3,431.88 in late charges for the period of September 2004 through April 2007.

(e)    $31,877.99, representing the attorneys' fees and costs incurred in the collection and enforcement of this action through October 15, 2007, in accordance with 29 U.S.C. §1132(g)(2)(D).

3.    Defendants, their owners, officers, agents, servants, attorneys and all other persons acting on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from refusing to file complete, proper and timely remittance reports with the accompanying contributions and dues for all periods Defendants are obligated to do so under the collective bargaining agreement(s);

4.      Within ten (10) days of the entry of this Order, Defendants shall fully and accurately complete and submit to the Plaintiff any and all outstanding remittance reports, including but not limited to reports and contributions for the period May 2005 through April 2007 , together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

5.      Within twenty (20) days of a request by Plaintiff or its counsel, Defendants shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendants are obligated to make fringe benefit contributions to the Plaintiff and Defendants shall bear the costs of said audit.

6.      Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendants shall be and hereby are restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and by other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendants shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

7.      If additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that

becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or

supplemental judgment reflecting any additional delinquencies, interest, late fees, liquidated

damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. §1132(g)(2) together with any

audit costs incurred by the Plaintiff.

8.     If any such further action by the Plaintiff is required, it may apply to this Court or

to the court in which enforcement is sought, for such further reasonable attorneys' fees and costs

in addition to those set out in Paragraph 2(d) above. See, Trucking Employees of North Jersey

Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and

Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at

*3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal

Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

9.     If Defendants fail to comply with any of the terms of this Order, the Plaintiff may,

in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69,

reopen this case upon motion to the Court and notice to the Defendants, and may at that time ask

for further appropriate monetary and/or injunctive relief.

BY THE COURT

Date:_____     By: _____
                                        Colleen Kollar-Kotelly,          J.
                                        United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED          )
TRADES INDUSTRY PENSION FUND               )
                                           )
                        Plaintiff,         )          CIVIL ACTION NO. 07-1130
            v.                             )
                                           )
DESIGN TECHNOLOGIES                        )
                                           )
            and                            )
                                           )
VINCENT ZAPPOLA, individually and          )
    d/b/a Design Technologies              )
                                           )
                        Defendants.        )

## DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.      My name is Thomas C. Montemore and I am the Assistant to the Fund

Administrator of the International Painters and Allied Trades Union and Industry Pension Fund

("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I

served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the

Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from

1982 to 1986, and File Clerk beginning in 1979.

2.      The Pension Fund is an "employee benefit pension plan" as defined in Section

3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union

of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry

whose employees are members of or otherwise represented by the Union and its district councils

and local unions, for the purpose of providing retirement income to the employees. The Pension



Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3.     I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.     The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.     Defendant, Design Technologies ("Company") is an unincorporated business. Vincent Zappola ("Individual Defendant" and together with Company, "Defendants") is the owner and proprietor of Company.

6.     Defendants are currently employers that are party to or bound by collective bargaining agreements ("Labor Contracts") with the Union.  True and correct copies of relevant provisions of the Labor Contracts are attached as Exhibit 2. Under the terms of the Labor Contracts, Company is bound to the Trust Agreement and Plan. See, Exhibit 2(a), Labor Contract, Art. XIII and Exhibit 2(b), Labor Contract, Art. VIII.

7.     The Labor Contracts require Company to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and set forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the

contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

8.      The Defendants previously incurred contribution delinquencies to the Pension Fund. Defendants owed delinquent contributions, liquidated damages and interest. The Pension Fund was awarded a judgment for $50,290.93 which was entered on May 21, 2005. The judgment was transferred to local counsel for collection. Defendants entered a settlement agreement with the Pension Fund on November 21, 2006 ("November 21, 2006 Settlement") which required Defendants to pay the balance of the delinquency as well as schedule an audit by December 31, 2006. Company paid the balance of the delinquency but failed to schedule the audit despite the Fund's auditor's repeated attempts to do so. Because New York only enforces money judgments, no further remedies are available to the Fund under the November 21, 2006 Settlement.

9.      Based upon information currently available to the Pension Fund, Defendants presently owe the Pension Fund contributions for the period May 2005 through April 2007 in the amount of at least $68,372.37. This amount includes an estimate for the period of March 2007 through April 2007, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund. For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants. The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Using this methodology, the Pension Fund has calculated the amount due for each of the months in the period as follows:

| MONTH | AMOUNT |
|---|---|
| December 2006 | $ 2,796.27 |

January 2007          $ 2,323.07
February 2007         $ 2,848.25
TOTAL                 $ 7,967.59

$7,967.59 divided by three equals $2,655.87, which is used as the

estimated contribution amount due for March 2007.

| MONTH | AMOUNT |
|-------|--------|
| January 2007 | $ 2,323.07 |
| February 2007 | $ 2,848.25 |
| March 2007 | $ 2,655.87 |
| TOTAL | $ 7,827.19 |

$7,827.19 divided by three equals $2,609.07, which is used as the

estimated contribution amount due for April 2007.

10.    Defendants owe interest through September 30, 2007 in the amount of $7,034.39

on the unpaid pension contributions. The interest has been calculated in accordance with the

fluctuating IRS interest rate, as provided at section 10 of the Plan.

11.    Defendant owes late charges in the amount of $3,431.88. ERISA and §10.12 of

the Plan allow other legal or equitable relief as the Court deems appropriate. Article VI, § 4 of

the Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form

of interest on contributions paid more than twenty days after the due date and prior to litigation.

Defendants owe $3,431.88 in late charges for the period September 2004 through April 2005.

12.    Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and

requires the assessment of liquidated damages against Defendants in an amount equal to the

greater of the following: the amount of interest owed on the delinquent principal, or twenty

percent (20%) of the delinquent principal. As noted above, the total interest owed through

September 30, 2007 in the amount of $7,034.39. Twenty percent (20%) of Defendants' unpaid

contributions and contributions paid past the due date total $16,804.77. Since the total amount of

182501-1                                    4

liquidated damages is greater than the interest amount, Defendants owe $16,804.77 in liquidated damages.

13.    The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

14.    Despite continuing contractual obligations to do so, Defendants have repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing

employers. Employees of contributing employers continue to accrue pension credits, based on

the hours of their employment, regardless of whether their employers make pension

contributions on their behalf for these hours, as contractually required. The Pension Fund's

obligation to recognize pension credits and to pay pensions to vested employees is absolute and

continues even if the employers fail to pay their required pension contributions. Employer

contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions

comprise the assets from which the Pension Fund pays retirement benefits to participants and

their dependents and beneficiaries. When employers, like Defendants, fail to pay their

contributions or do not pay them timely, the Pension Fund is deprived of the investment income

they otherwise could have earned. In addition, the Pension Fund also must engage in time-

consuming and costly efforts to collect the unpaid contributions. These efforts include letters and

phone calls to the employer, investigating other sources for collection and attempting to calculate

delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available.

Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that

participants (and their dependents) employed by the delinquent employer are not deprived of

retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and

manpower) incurred by the Pension Fund in connection with an employer contribution

delinquency are not capable of precise determination, but they are substantial. Defendants'

refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an

obligation to make benefit payments to employees without necessary contributions from

Defendants to cover those benefits. Therefore, Defendants should be required to submit timely

current contributions and remittance reports in the future.

182501-1                                          6

15.    I have executed this Declaration in support of Plaintiff's Motion for Default

Judgment against Defendants and request that this Court consider the same as proof in support of

the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under
Penalty of perjury that the foregoing is true
and correct.

Executed on: _10/15/07_

THOMAS MONTEMORE

# *Agreement*

BETWEEN

DISTRICT COUNCIL NO. 711
INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES
STATE OF NEW JERSEY



AND

GARDEN STATE COUNCIL
PAINTING AND DECORATING CONTRACTORS
OF AMERICA
THE NEW JERSEY GLASS AND METAL CONTRACTORS
ASSOCIATION
THE DRYWALL AND INTERIOR SYSTEMS CONTRACTORS
ASSOCIATION, INC. OF NJ

EFFECTIVE MAY 1, 2000 THRU APRIL 30, 2006



# TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Jurisdiction | 3 |
| 3 | Union Security | 7 |
| 4 | Administrative Dues | 7 |
| 5 | Exclusive Hiring Hall | 7 |
| 6 | Wages and Schedules | 10 |
| 7 | Hours & Overtime | 27 |
| 8 | Contractual Relations and Obligations | 28 |
| 9 | Working Conditions | 30 |
| 10 | Fringe Benefit Funds | 31 |
| 11 | Cooperation and Advancement Funds | 33 |
| 12 | Political Action Fund | 34 |
| 13 | Joint Board | 35 |
| 14 | Union Representatives and Shop Stewards | 35 |
| 16 | Preservation of Work Clause | 36 |
| 17 | Joint Trade Board | 37 |
| 18 | Successor Clause | 39 |
| 19 | General Savings Clause | 40 |
| 20 | Duration Clause | 40 |

in the shop for the periods indicated above for which they are paid.

(B)    In the event weather conditions require the stoppage of work on any day after work has begun, employees shall be paid to the next full hour.

7.6    If an employee fails to report to work and the employer finds he cannot use the employee upon his return to work, the employer shall have the option of either paying off the employee at once or requesting him to wait for any wages due him until the next regular pay day. Waiting time shall not enter into the settlement.

7.7    The following are recognized holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, General Election Day - afternoon (a full 8 hour day at regular wage rates is permitted prior to noon), Veterans Day, Thanksgiving Day, and Christmas Day.

7.8    In the event work is lost due to weather or job conditions, work may be accomplished on Saturday, Sunday at the regular straight time rate to make up for the lost time.

7.9    (A)    Ten percent (10%) shall be added to the previously indicated wage rates for any eight (8) hours work outside the regular work day. Fifteen percent (15%) shall be added to the wage rates for any second shift outside the regular work day.

(B)    In addition to the added amounts in 7.9A, when three (3) shifts exist, the second shift shall receive eight (8) hours pay for seven and one half (7 1/2) hours work; the third shift shall receive eight (8) hours pay for seven (7) hours work.

(C)    The above applies to work classification 6.1(A) only.

**ARTICLE 8**
**CONTRACTUAL RELATIONS & OBLIGATIONS**

8.1    One member of a firm is allowed to work with the tools and a contractor is one that employs, on average, at least one person throughout the year.

8.2    Each employer shall carry comprehensive kinds of insurance such as, but not limited to, worker's compensation, public liability and property damage on equipment, automotive and otherwise, when used by its employees, as well as other coverage carried by custom or practice in this

by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

8.6   The Union agrees that journeymen will not be referred to a builder unless extenuating circumstances justifies the referral and the coalition is consulted prior to providing any employees.

8.7   In the event that a builder or general contractor owes monies for work performed on a job to a contractor who is signatory to an agreement with the Union, they will endeavor to do everything legally possible to see that all just debts owed to the contractor shall have been settled satisfactorily.

## ARTICLE 9
## WORKING CONDITIONS

9.1   The use of spray equipment is allowed to paint acoustical surfaces, ceiling grid, furniture, bar-joists, structural steel, corrugated ceiling and walls (including pipes, ducts, conduit, hangers, steel, etc. adjacent thereto), wood walls and ceilings, where exposed joists are thirty (30) inches or less on centers, fin type radiation, floors, louvers and gratings, block filler with backrolling; metal pan stairs and spindle railings, plastics and multi-color materials, lacquers and any other material deemed not brushable, and any and all work at housing projects. In the event a second employee is necessary in a spray painting operation, he shall also receive the spray rate provided he works in the immediate work area at all times the equipment is in use. He shall also relieve and otherwise assist the other person.

(A)   The Joint Board shall study other processes, materials and surfaces and shall determine those which shall be added to those mentioned herein.

(B)   The Business Manager shall be notified when spraying is contemplated.

9.2   The unrestricted use of tools of the painting trade is permitted on work classified in 6.1A (prevailing wage jobs); 6.1B; and 6.1C.

9.3   It is understood and agreed and recognized that traditional hand tools to perform work with namely hawks, trowels, bread pans, and broad knives, will be supplied by the Employees. The Employer shall furnish all other tools and equipment to work with and if at any time such tools or equipment or any material or work conditions shall constitute a hazard to health or physical safety, the Employer shall not permit his employees to

use such tools, equipment or materials or to work under such conditions. Employees refusing to work with such tools, equipment or materials or under such working conditions shall not be discriminated against by the Employer. Any disagreement arising hereunder shall be submitted to the Joint Trade Board as provided by this Agreement. No Employee shall be discriminated against for his refusal to work with or use stilts, or machine type tools for which has has not received training. There shall be no restrictions on the use of materials, tools, equipment or other labor-saving devices or on production output by employees; provided however the employee has been qualified by District Council 711 JATC Fund to the use of the tools involved. Past practice and policy is and shall continue to be recognized, meaning mechanical and machine type tools will not be used without the express consent and permission of the Union which will not be open to dispute, except for trained or experienced employees of DISCA members.

9.4   The employer shall abide by the terms of the Safety Act of the State of New Jersey as well as those of the Federal OSHA.

## ARTICLE 10
## FRINGE BENEFIT FUNDS

10.1   The Employers and the Union have established an Education and Training Fund to be known as the District Council 711 Education and Training Fund. Effective May 1, 2000, each employer shall contribute to the Apprenticeship and Training fund the amounts indicated in 6.4.

10.2   The Agreement between the Employer(s) and Union parties to this Agreement regarding payments to the International Joint Painting, Decorating and Drywall Apprenticeship and Manpower Training Fund is as follows:

(A)   Commencing with the first day of May, 2000, and for the duration of this Agreement and any renewals or extensions thereof, the Employer, as defined in the Agreement and Declaration of Trust executed by and between the International Union of Painters and Allied Trades and employer associations in the industry, agrees to make payments to the National Apprentice Fund for each employee covered by this Agreement, as follows:

(B)   For each hour, or portion thereof, for which an employee receives pay, the employer shall make a contribution in the amount indicated in 6.4 to the above named Apprenticeship Fund.

31

(C)  For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D)  Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E)  The payments to the Training Fund required above shall be made to the National Training Fund which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.  (A)  Commencing with the first day of May, 2000, and for the duration of the Agreement, and nay renewals or extension thereof, the employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B)  For each hour or portion thereof for which an employee receives pay, the employer shall make a contribution of in the amount indicated in the 6.4 charts to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry Annuity Plan shall be as indicated in said charts.

(C)  For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D)  Contributions shall be paid on behalf of any employee starting

32

with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

(E)   The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

2.   The employer hereby irrevocably designates as its representatives on the Board of Trustees such trustees as are now serving, or who will in the future serve, as employer trustees, together with their successors. The employer further agrees to be bound by all actions taken by the trustees pursuant to the said Agreement Declaration of Trust, as amended from time to time.

The employer will not engage in any litigation against the Union, on a subrogation theory, contribution theory or otherwise, so as to obtain a money judgement from it in connection with any work related disease, sickness, death, injury, or accident.

10.4   Health and Welfare Fund - By Agreement and Declaration of trust dated June 1, 1990, the Association and Union Established the Painters District Council 711 Health and Welfare Fund.

(A)   Employer contributions shall be in the amounts indicated in 6.4 charts.

## ARTICLE 11
## COOPERATION AND ADVANCEMENT FUNDS

11.1   Labor Management Cooperation Funds:

1.   Commencing as of the effective date of this Agreement, and for the duration of this Agreement, and any renewals or extensions thereof, the employer agrees to make payments to The Painters and Allied Trades Labor-Management Cooperation Fund for each employee covered by this Agreement, as follows:

(A)   For each hour of portion thereof, for which an employee receives pay, the Employer shall make a contribution of the amount indicated in 6.4 to the Fund.

33

20.2   This Agreement shall be in full force and effect until and including April 30, 2006, and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) and not more than ninety (90) days prior to April 30th, of any subsequent contract year.

20.3   Where no such cancellation of termination is served and the parties desire to continue said Agreement, but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a written notice not less than sixty (60) and not more than ninety (90) days prior to April 30, 2006 of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon. Nothing herein shall preclude the parties from making revisions or changes in this Agreement, by mutual consent, at any time during its term.

IN WITNESS WHEREOF the parties hereto have set their hands and seals, this 16th day of November, 1999, to be effective as of 11/16/99, except as to those provisions where it has been otherwise agreed between the parties.

PAINTERS D.C. #711, IUPAT        GARDEN STATE COUNCIL, PDCA

NEW JERSEY GLASS & METAL
CONTRACTOR ASSOCIATION

DRYWALL AND INTERIOR SYSTEMS
CONTRACTORS ASS'N., INC. OF NJ

EXECUTIVE DIRECTOR

41

RECEIVED

JUL 2 6 2000

G.S.T.

# TRADE AGREEMENT

between

## DISTRICT COUNCIL NO. 9,
## INTERNATIONAL UNION
## OF PAINTERS and ALLIED TRADES,
## A.F.L. - C.I.O.

and the
## ASSOCIATION OF MASTER PAINTERS
and
## DECORATORS OF NEW YORK, INC.
and
### THE ASSOCIATION OF WALL, CEILING, & CARPENTRY INDUSTRIES OF NEW YORK, INC.
and
### THE WINDOW AND PLATE GLASS DEALERS ASSOCIATION

### June 1, 2000  through April 30, 2005

Rule No. 10 — Blood Testing.  Whenever blood testing, urine analysis or any other form of testing is a condition of employment on a job, all costs related to said testing shall be borne by the Association employer.

Rule No. 11 — OSHA Training.   In order to work, a JOURNEYMAN or apprentice must have completed the ten-hour OSHA Safety Course, as per OSHA regulations and will comply with any other statutorily required training programs.

Rule No. 12 — Safety Training for Foremen.  All foremen must attend a minimum of eight (8) hours of safety training per calendar year.

## INSURANCE

**Art. XIX.** — Every Association employer shall carry all insurance required under state and/or federal laws and shall be required to keep a Certificate of Worker's Compensation on file with the Union.

## FRINGE BENEFIT CONTRIBUTIONS

**Art. XX. Sec. 1.** -- The Board of Trustees of the Painting Industry Insurance Fund (the "Insurance Fund") shall administer benefit contributions paid by employers who are signatories to this Trade Agreement ("Signatory Employers") for work performed within the jurisdiction of this Trade Agreement, pursuant to the rules, regulations and procedures set forth in this Article. The Board of Trustees of the Insurance Fund shall also administer benefit contributions paid by members of the Window and Plate Glass Dealers Association and the Association of Wall, Ceiling and Carpentry Industries of New York, Inc. for work performed on account of which contributions are required to be made to the Funds set forth below, which members and contributions shall be subject to the rules, regulations and procedures set forth in this Article (and Articles XXI and XXII).

**Art. XX. Sec. 2. — Contribution Rates**

(a) All Signatory Employers shall make contributions as defined in this Trade Agreement, for each hour worked, and for overtime hours (for which fringe contributions shall be made at the rate of time and one-half), by their employees covered under this Trade Agreement, except where contribution amounts are based upon the amount of gross wages paid to an employee.  In such a case, gross wages shall be defined as set forth in subsection (b) herein.

(b) "Gross Wages" and "Gross Wages Payable" as used in this Trade Agreement shall mean and include whichever of the two definitions below may be greater:

(i)    The actual total gross earnings of any JOURNEYPERSON or apprentice; or

(ii)   A gross estimated wage figure, subject to readjustment as hereinafter provided, equivalent to two (2) times the Signatory Employer's cost of all materials used by it during the fiscal accounting period, as finally computed and assessed at the close thereof. After review by the auditors and trustees of the present industry wage costs, and upon their recommendation, the above-stipulated formula may be adjusted.

### Art. XX. Sec. 3. — Trust Administration

(a) Contributions — Each Signatory Employer shall pay to the Insurance Fund under Agreements and Declarations of Trust heretofore and hereafter created or amended, the terms and provisions of which are specifically incorporated herein by reference, contributions for each trust fund in such amounts as are set forth in the schedule of wages and benefit contributions in this Trade Agreement for all JOURNEYPERSONS and apprentices employed by the Signatory Employer, for the most recent pay period. Each Signatory Employer shall be bound by and to the Agreements and Declarations of Trust of such trust funds, and all interpretations of and rules and regulations issued thereunder, as though they had actually signed the same. Such contributions shall be deposited, in accordance with the terms of this Trade Agreement, into the following trust funds and administered as set forth hereafter:

(i)    Insurance Fund (to provide health and welfare and vacation benefits). (*See* Art. XX, Sec. 6B)

(ii)   District Council No. 9 Painting Industry Annuity Fund. (*See* Art. XX, Sec. 6C)

(iii)  International Union of Painters and Allied Trades Union and Industry National Pension Fund. (*See* Art. XX, Sec. 5)

(iv)   District Council No. 9 Joint Apprenticeship and Training Fund. (*See* Art. XX, Sec. 6A)

(v)    International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund. (*See* Art. XX, Sec. 6A)

(vi)   The Painters and Allied Trades Labor — Management Cooperation Fund. (*See* Art. XX, Sec. 7)

(vii) District Council No. 9 Political Action Together — Political Committee. (*See* Art. XX, Sec. 8)

(viii) International Union of Painters Allied Trades Political Action Together — Political Committee. (*See* Art. XX, Sec. 9)

(ix) Association of Master Painters and Decorators of New York Industry Promotion Fund, Association of Wall, Ceiling and Carpentry Industries of New York, Inc. Promotion Fund, Window and Plate Glass Dealers Association Promotion Fund. (*See* Art. XX, Sec. 11)

(b) Administration of Contributions. Each Board of Trustees shall administer and expend said contributions pursuant to the aforesaid Agreements and Declarations of Trust and this Trade Agreement, and shall have the authority to increase or decrease any benefits payable hereunder in their sole and absolute discretion, and as they may determine from time to time.

## Art. XX. Sec. 4 — Stamp System

(a) Method of Operation

(i) Stamps — Each Signatory Employer employing a JOURNEYPERSON or apprentice shall make benefit contributions for said JOURNEYPERSON or apprentice by purchasing benefits contribution stamps from the Funds on a weekly basis. Stamps shall represent payment for hourly benefit contributions in such denominations as the Trustees of the Funds shall deem appropriate.

(ii) Purchase of Stamps — The Signatory Employer shall file with the Funds a weekly requisition for stamps accompanied by the exact amount of payment to the Funds for all stamps purchased. In the event that a Signatory Employer defaults on any specific remittance for any reason, payment for stamps thereafter shall be by certified or bank check only. Stamps shall be issued by the Funds in person or by mail so as to insure timely delivery of stamps to JOURNEYPERSONS and apprentices.

(iii) Delivery of Stamps — Stamps representing the number of hours of work credited to each JOURNEYPERSON and apprentice weekly shall be given to each JOURNEYPERSON and apprentice with his or her wages. In the event a JOURNEYPERSON or apprentice is laid off prior to the end of the payroll week, all fringe benefit contributions stamps for hours of work credited to the JOURNEYPERSON and apprentice must be delivered and received by the Union on

39

(iv)  Irrevocably designate as their representative on the Boards of Trustees of said Funds, such Trustees as are presently serving pursuant to said Trust Agreements or other Trust Documents as Union and Employer Trustees, together with their successors selected in the manner provided in said Trust Agreements or other Trust Document; and

(v)  Agree to be bound by all actions of said Boards of Trustees pursuant to the said Trust Agreements or other Trust Documents.

## ENFORCEMENT OF ARTICLE XX

**Art. XXI, Sec. 1 — Payments.**

(a)  All Art. XX Fringe Benefit Contributions shall be made at such times and in such manner as the Boards of Trustees (collectively, the "Trustees") and/or the National Trustees shall prescribe in accordance with the applicable Trust Agreement, as amended from time to time. The Signatory Employers agree that the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll, wages, cash disbursements records and general ledger of any Signatory Employer for the purpose of determining the accuracy of such contributions.

Unless otherwise provided by the Trustees, payments for all fringe benefit contribution stamps must be made by certified or bank checks.  No cash currency, personal or business checks shall be accepted, except by Signatory Employers in good standing of a recognized Association or other Signatory Employers, who shall be able to pay with regular business account checks on a New York State licensed bank with a branch located in the geographic jurisdiction of this Trade Agreement.  If any Signatory Employer shall have its check dishonored, then this privilege shall be withdrawn.

(b)  For the purpose of this Article, Article XX and Article XXII, each hour worked and paid for including hours attributable to show up time, and other hours for which pay is received by a JOURNEYPERSON or apprentice in accordance with this Trade Agreement, shall be counted as hours for which Art. XX Fringe Benefit Contributions are payable.

(c)  Art. XX Fringe Benefit Contributions shall be paid on behalf of any JOURNEYPERSON or apprentice, including, but not limited to, probationary employees, starting with his/her first day of employment in a job classification covered by this Trade Agreement.

48

(d) The failure of an Employer to make fringe benefit contributions or pay interest, liquidated damages or fees related thereto as provided for in this Article and Article XXII and Article XX, shall be attributed to any officer, stockholder, partner or proprietor in actual control of said Employer, and execution of this Trade Agreement by any such person shall bind said person individually to the terms and conditions set forth herein. A default in payment of any fringe benefit contributions or pay interest, liquidated damages or fees related thereto due pursuant to this Article and Article XX and Article XXII shall follow said officer, stockholder, partner, and / or proprietor into any succeeding enterprise entered into by said person. Where the Trustees determine that an Employer is being operated in the name of a nominee, family member, successor entity or alter ego of an individual actually controlling the Employer, the Trustees may consider any default of the obligations set forth in such Articles to be the default of said controlling individual.

(e) Art. XX Fringe Benefit Contributions Payment Method.  Signatory Employers under this Trade Agreement shall use the following method providing for the time when payment of Art. XX Fringe Benefit Contribution payments shall be due and payable.  Signatory Employers must make Art. XX Fringe Benefit Contributions under the Stamp System, where an 8-day grace period is permitted.  The amount of the security payment shall be $5,000.00.

(f) Regardless of the ability or inability of an Signatory Employer to pay its required Fringe Benefit Contributions, the Signatory Employer shall be required to submit remittance reports weekly. The failure to submit such reports will subject the Signatory Employer to fines by the Joint Trade Committee.

**Art. XXI. Sec. 2 — Penalties.**

(a) The required Art. XX Fringe Benefit Contributions constitute a consideration for entering into this Trade Agreement and constitute its very essence.  Failure by any Signatory Employer to pay to the Trust Funds amounts due under this Trade Agreement shall be deemed a breach of this Trade Agreement, and thereupon a termination notice shall be served by the Trustees upon the Union.  In such event, the Union must enforce the foregoing and following provisions relating to payment to the Trustees. In the event a Signatory Employer fails to make the required payments or reports for more than forty-eight (48) hours after such notice of termination, the Union must order its JOURNEYPERSONS and apprentices to cease work until all required payments and/or reports have been rendered.  Such Signatory Employer must pay all such JOURNEYPERSONS and apprentices for all time lost, not to exceed one (1) week of wages per JOURNEYPERSON or apprentice.

(b) If a Signatory Employer fails to make contributions to the Pension Fund within the date required by the National Trustees, or fails to make any other Art. XX Fringe Benefit

49

Contributions when due in a timely manner pursuant to this Trade Agreement, the Union shall have the right to take whatever steps are necessary to secure compliance with this Trade Agreement, notwithstanding any other provisions hereof to the contrary. The Signatory Employer shall be liable for all costs of collection of the payments due together with attorneys' fees and such penalties as may be assessed by the Trustees and/or National Trustees, as set forth in Art. XXII, Sec. 2(a), (b), (c) and (d). The Signatory Employer's liability for payment under this Trade Agreement shall not be subject to or covered by the grievance or arbitration procedure in Articles XII and XIII, nor the "no strike" clause set forth in Art. XIV.

**Art. XXI. Sec. 3 —** Qualification for Income Tax Deductions. Each of the Trust Funds set forth in Article XX which are intended to qualify under the Internal Revenue Code shall at all times conform with the currently applicable requirements of the Internal Revenue Code so as to enable each Signatory Employer at all times to treat Art. XX Fringe Benefit Contributions as a current deduction for income tax purposes. In the event that an Art. XX Fringe Benefit Contribution is not currently deductible, the Signatory Employer shall not be required to make such payment.

## BONDS, DAMAGES, FEES AND INTEREST

**Art. XXII. Sec. 1 — Bonds.**

(a) Security — The Signatory Employer shall provide security to the Trustees for the faithful performance by it of the requirements under this Trade Agreement for the payment of Signatory Employer Benefit Contributions, liquidated damages, interest, attorneys' fees, costs of collection and other monetary obligations under this Trade Agreement. The Trustees shall be entitled to retain any interest that accrues on such security during the time such security is deposited with the Trustees.

(b) Form of Security — Such security deposited with the Trustees shall be in the form of cash, surety bond acceptable to the Trustees, or other security acceptable to the Trustees.

(c) Amount of Security — The amount of security which the Signatory Employer is required to deposit with the Trustees under the stamp system, where an 8-day grace period is permitted, shall be $5,000.00.

(d) If at any time a Signatory Employer's security on deposit with the Trustees shall, for any reason, be in an amount less than the amount required by this Section, the Signatory Employer shall immediately deposit with the Trustees additional security so that the Signatory Employer's security on deposit shall at all times comply with this subsection.

50

(e) The Trustees shall not accept any surety bond or other non-cash collateral from any Signatory Employer who shall have failed in the past to make payment of any sums found by the Trustees or National Trustees to be due under this Trade Agreement or under any prior Trade Agreement. In such cases, compliance with the security requirements hereof shall be by cash deposit only.

(f) Additional Security — In the event the Trustees determine that a Signatory Employer is guilty of violating any provision of this Trade Agreement, and is assessed a fine or penalty by the Trustees, or in the event the Trustees bring suit against a Signatory Employer to collect unpaid Art. XX Fringe Benefit Contributions or interest, liquidated damages or fees related thereto, the Signatory Employer shall provide additional security in such form and amount as the Trustees shall determine. In no event shall such additional security be less than the amount of the Signatory Employer's potential liability to the Trustees. Any additional security required pursuant to this subsection shall be deposited with the Trustees who are authorized to pay out of such security any sums found by the Trustees to be due for unpaid Art. XX Fringe Benefit Contributions, liquidated damages, interest, attorneys' fees, or other costs of collection.

## Art. XXII. Sec. 2. — Damages, Interest and Fees.

(a) Liquidated Damages — Time is of the essence for the payment of Art. XX Fringe Benefit Contributions. The parties recognize and acknowledge that the regular and prompt payment of Art. XX Fringe Benefit Contributions by Signatory Employers is essential, and that it would be extremely difficult, if not impractical, to fix the actual expense and damages which will result from a failure of a Signatory Employer to make the required Art. XX Fringe Benefit Contributions in full within the time provided, and without becoming delinquent.

Therefore, the parties agree that if the required Art. XX Fringe Benefit Contributions shall become delinquent, the amount of damage resulting from any such delinquency shall be, by way of liquidated damages, and not as a penalty, a sum equivalent to 20% of the total Art. XX Fringe Benefit Contributions required pursuant to this Trade Agreement, for each failure to pay in full within the time provided in Art. XX, Sec. 1(g), for each pay period for which payments are required to be made. The liquidated damages, so fixed and computed, shall be added to and become a part of the Signatory Employer's required Art. XX Fringe Benefit Contribution due to any of the Trustees.

(b) Interest — If the required Art. XX Fringe Benefit Contributions of a Signatory Employer become delinquent, in addition to the amount assessed as liquidated damages, interest shall be added to the obligation of the delinquent Signatory Employer, calculated monthly at the annual rate of the prime rate plus 2.0%, which shall be calculated based upon the sum of all Art. XX Fringe Benefit Contributions due for the period for which the Signatory Employer is delinquent, starting with the first day of delinquency (*i.e.*, the ninth day).

(c) Attorneys' Fees and Cost of Collection — If the required Art. XX Fringe Benefit Contributions become delinquent, in addition to the amount due as liquidated damages and interest as provided for in the preceding subsections (a) and (b), there shall be added to the obligation of the delinquent Signatory Employer, all reasonable expenses incurred by the Trustees in the collection of any delinquency, liquidated damages and interest, including but not limited to (i) reasonable attorneys' fees; (ii) accountant's fees; (iii) cost of attachment and execution; (iv) bond; (v) receivers; and (vi) court costs.

(d) All liquidated damages, interest, and any other costs and assessments due and received from a delinquent Signatory Employer shall be paid to and received by the Trustees.

**Art. XXII. Sec. 3 —Trust Fund Hearing.**

(a) Signatory Employer Request — Should an Signatory Employer, after an audit held by the Trustees, be subject to an assessment of additional Art. XX Fringe Benefit Contributions, the Signatory Employer shall be entitled, on request, to a hearing before the Trustees or a properly appointed subcommittee thereof. At such hearing, the Signatory Employer shall be given an opportunity to present all available facts, and shall be subject to open examination thereon, so that the Signatory Employer may establish an actual lower direct labor cost such that a readjustment of the basis for the calculation of the Signatory Employer's Fringe Benefit Contributions due to the Trustees is warranted. At such hearing, the Trustees shall consider the recommendation of the Funds' auditors and any proof that the Signatory Employer may offer. If the Signatory Employer's right to a readjustment is proven, the Trustees shall remit any excess Art. XX Fringe Benefit Contributions to the Signatory Employer. The decision of the Trustees, after such hearing, shall be final and binding.

(b) Failure to Request Hearing — If, after an audit and a final assessment of further contributions due, the Signatory Employer fails, within ten (10) days after written notice thereof given by the Trustees, to request in writing a hearing before them as provided in the preceding sub-section (a), the Signatory Employer shall be deemed conclusively to have consented thereto, with no further recourse.

# CONDITIONS

**Art. XXIII. Sec. 1** — In the event that the Union enters into a contract, or contracts, or enters into renewals or modifications of a contract, or contracts, with any employers performing the work covered by this Trade Agreement which contain new or revised economic terms or other conditions effective on or after May 31, 2000, which economic terms or other conditions are more favorable to such employers than the terms contained in this Trade Agreement, the Union shall immediately notify the Association of such more favorable terms, and the Association and

DESIGN TECHNOLOGIES                FAX NO. : 7186056442              Oct. 29 2003 04:46PM    P3

Oct-29-2003 04:26pm    From-PAINTERS DC 9                    2122551191            T-175  P.002/002  F-588

1) Contributions into said funds shall be made at the rate, in the manner, and under the terms of conditions, specified in said contract.

2) (a) The Employer is bound by and to the Agreement and Declaration of Trust, effective April 1, 1967, establishing the International Painters and Allied Trades Industry Pension Fund (IUPAT Industry Pension Fund), and the Standard Form of Participation Agreement issued by the Trustees of said Fund.

(b) The Employer is bound by and to the Agreement and Declaration of Trust, effective August 1, 1948, and amended thereafter establishing the Painting Industry Insurance and Annuity Fund (PIIAF), and the Standard Form of Participation Agreement issued by the Trustees of said Fund.

(c) The Employer is bound by and to the Agreement and Declaration of Trust, effective June 1, 1993, and amended thereafter establishing the DC 9 Joint Apprentice and Training Fund (JAATF), and the Standard Form of Participation Agreement issued by the Trustees of said Fund.

3) The employer acknowledges his receipt and/or examination of each of the above-described documents;

4) The employer irrevocably designated as his representatives on the Board of Trustees of each of the above described Funds such Trusted as are named in said Agreement as Employer Trustees, together with their successors selected in the manner provided in said Trust Agreements; and

The Employer is and will be bound by all actions taken by said Trustees pursuant to the said Trust Agreements 1/.

*For the Employer:*

V̲I̲N̲C̲E̲N̲T̲ ̲Z̲A̲P̲R̲O̲L̲A̲

_____
Signature

V̲I̲N̲C̲E̲N̲T̲ ̲Z̲A̲P̲R̲O̲L̲A̲,̲ ̲O̲W̲N̲E̲R̲
Name, Title

*For the Union:*

District Council No. 9, IUPAT

_____
(DC 9 Office Address)

_____
Signature

_____
Name, Title

1/. Out-of-town contractors who sign this Agreement will not be required to separately sign any Trust documents.

**A Copy of the CURRENT Signature Page of the "Home" DC or LU must be attached to this Agreement.**

# RECEIVED

OCT 29 2003

# IUPAT PENSION FUND

(D) 3770

The Parties hereto are desirous of entering into an agreement to set forth certain and regulate the wages, hours, fringe benefits, terms and conditions of employment under which the employer will employ PAINTERS, TAPERS, GLAZIERS, AND ALLIED TRADES, EFFECTIVE MAY 1, 2000 THROUGH APRIL 30, 2006.

At the commencement of each contract year or upon beginning of work within the territory during each contract year, each employer shall pay the Joint Trade Board the sum of fifty dollars ($50.00) as per Article 179.

Business Name: DESIGN TECHNOLOGIES

Business Address: 888 HUGUENOT AVE.

STATEN ISLAND, N.Y. 10312

Phone No.: 718 980-4409  Fax 718 605-6442

Federal ID No.: 13-4026237

Workmens Comp. Ins. Co.: THE STATE INSURANCE FUND

Unemployment Comp. No.: 1317 785-2

Temp. Disability Benefits Ins.: 0467 896

Signed This 8th Day of July 2002

Employer Signature:

Employer Print Name & Position: VINCENT ZAPPIA, OWNER

For The Union: R-W3

Trustee & Business Business Manager, District Council 711
INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES
3156 Ocean Heights Avenue
Egg Harbor Twp., NJ 08234
Ph. 609-653-4403  Fax 609-653-8795

**EMPLOYER COPY**

**RECEIVED**

NOV 0 2003

**IUPAT PENSION FUND**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
)
                    Plaintiff, )      CIVIL ACTION NO. 07-1130
    v. )
)
DESIGN TECHNOLOGIES )
)
    and )
)
VINCENT ZAPPOLA, individually and )
   d/b/a Design Technologies )
)
               Defendants. )

**DECLARATION OF PHILIP A. LOZANO**

    Philip A. Lozano, Esquire declares and states, the following:

    1.    I am an associate with the law firm of Jennings Sigmond and presently serve as

counsel to the International Painters and Allied Trades Industry Pension Fund ("Pension Fund")

in this case. I am submitting this Declaration to document the attorneys' fees and costs which

the Pension Fund has incurred in this case through October 15, 2007.

Case Fees

    2.    Attached as Exhibit 4 to Plaintiff's Motion for Entry of Judgment by Default, and

incorporated herein by reference, is a list showing all work performed by the office of Jennings

Sigmond, P.C. and related costs in connection with the preparation of the Complaint and the

Motion for Entry of Judgment by Default against Design Technologies *et al.* in this action

through October 15, 2007. The listing was prepared from contemporaneous attorney time and

expenses records and bills, the originals of which are maintained in the regular business records

188271-1



of Jennings Sigmond. Each piece of work is separately coded and the work performed is

described. The fees and costs relevant to this case are $31,877.99.

3.      The identity of those performing services related to this matter and normal hourly

rates are as follows.

| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| SGR | Sanford G. Rosenthal | Shareholder | $220.00 |
| SMC | Shanna M. Cramer | Associate | $220.00 |
| PAL | Philip A. Lozano | Associate | $220.00 |
| CTM | Cathy T. Morton | Paralegal | $ 70.00 |

4.      Plaintiffs only seek judgment for fees in the bills, which reflect a special fee

schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform

$220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.      Sanford G. Rosenthal. Sanford G. Rosenthal is a firm shareholder and co-leader

of the ERISA practice and has practiced law for 23 years. He received his undergraduate

education at Pennsylvania State University, where he graduated in 1971. He worked as Audit

Manager and Office Manager in the administrative team for the Teamsters Health and Welfare

and Pension Funds of Philadelphia and Vicinity from 1971 through 1980. Mr. Rosenthal

attended the Dickinson School of Law, where he was awarded the Degree of Juris Doctor in

1983. Mr. Rosenthal is a member of the Bar of the Supreme Court of Pennsylvania and the

District of Columbia Bar. He is also admitted to practice before the United States Court of

Appeals for the Third Circuit and the United States District Courts for the Eastern and Middle

Districts of Pennsylvania. His practice concentrates on the representation of multiemployer

benefit funds in delinquency litigation and counseling. A sample of his litigation experience is

available in 32 published cases that be obtained through a Westlaw search for "AT ("Sanford G. Rosenthal") and Jennings" in the FPENS-CS library.

     6.     <u>Shanna M. Cramer</u>. Shanna M. Cramer, an associate in the firm, has actively practiced law for five (5) years. She graduated in 1997 from Rutgers University, with honors, with a Bachelors Degree in History, Political Science and Spanish.  She received her law degree in 2001 from Rutgers Law School. Ms. Cramer graduated in 2004 from Beasley School of Law-Temple University, with an LL.M in Taxation. Ms. Cramer has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

     7.     <u>Philip A. Lozano</u>.  Philip A. Lozano, an associate in the firm, received his undergraduate degree from Franciscan University in 1996 and his law degree from the Beasley School of Law, Temple University in 2006.  Prior to practicing law, he worked for three (3) years as a pension analyst for the IBM Corporation and five (5) years as a pension consultant for Mercer Human Resources Consulting and Duane Morris LLP.   Mr. Lozano has been admitted to the Pennsylvania Bar and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

     8.     <u>Catherine T. Morton</u>. Catherine T. Morton was a Paralegal in the Jennings Sigmond office until August, 2007. She was with the office for six (6) years and was experienced in corporate computer database research, electronic filing procedures throughout the country and preparation and documentation of service of complaints and other pleadings for employee benefit collections matters, in addition to other skills.

<u>Legal Market Benchmark</u>

9.      The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

10.     My opinion that the time and fees are reasonable is based on a number of factors, including the following.

(a)      We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups. The firm currently has 16 lawyers, with a dedicated benefits department of six (6) lawyers plus part-time work by three (3) other lawyers in the labor practice. The work is specialized and our competition often is large corporate firms with both employee benefits and federal litigation experience. In my experience, our fees are normally substantially lower than the charges of larger firms.

(b)      The flat rate is this case is consistent with market rates in published surveys by Altman Weil, a leading law firm consultant. A true and correct copy of the Altman Weil data is attached as Exhibit 5. Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/. The median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005),   A $200 rate in 2006 is only a 2.56% increase over the 2005 median for associates only.

(c)      The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law. pdf, especially pages 26 and exhibit 27, especially after giving weight to increases from 2004 to

2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in

Altman Weil data, showing an 8.33% higher rate in median associates' rates in the Middle

Atlantic region ($195) over the East North Central region covering Ohio ($180)). A true and

correct copy of the 2004 Ohio bar association survey is attached as Exhibit 6. The Ohio survey

showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and

Columbus areas of $200 - $235 per hour, ranging up to $ $334 - $359 at the 90[th] percentile. See,

Exhibit 7 (excerpt page 26). It also shows that a $70 per hour paralegal rate is less than the

median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit

6 (Ex. 27).

  I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information and belief.

Signed on: *11/7/07*

Pursuant to 28 U.S.C. § 1746, I declare under
penalty of perjury that the foregoing is true and
correct.

PHILIP A. LOZANO, ESQUIRE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED
TRADES INDUSTRY PENSION FUND )

                   Plaintiff, )

         v. )              CIVIL ACTION NO. 07-1130

DESIGN TECHNOLOGIES )

     and )

VINCENT ZAPPOLA, individually and )
d/b/a Design Technologies )

              Defendants. )

**ATTORNEYS' FEES AND COSTS**

| Date | Attorney | Task | Time (hrs) |
|------|----------|------|-----------|
| 10/2/07 | PL | Review of Correspondence from Pension Fund re: Delinquency | .1 |
| 10/4/07 | PL | Review of Correspondence from G. Meyers to Defendant re: Delinquency | .2 |
| 10/9/07 | PL | Review and Revise Motion for Default Judgment | 1.2 |
| 10/15/07 | PL | Preparation of Documents related to the Motion for Default Judgment; Calculation of Attorney's Costs and Fees; | 1.8 |

PL – 3.3 Hours @ $220.00/Hour      =     $ 726.00

188271-1


EXHIBIT

# Jennings Sigmond, P.C.
## Time And Expense Details

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| PTINTF | IUPAT Industry Pension Fund | 29084 | Design Technologies (2) | Sigmond, Richard B. |

### Unbilled Time

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 9/17/2007 | Pl | 1.80 | 1.80 | 220.00 | $396.00 | | | Preparation of 55(a) Motion |
| 9/18/2007 | Pl | 1.20 | 1.20 | 220.00 | $264.00 | | | Phone Conference with Process Server Regarding Same / Review of ECF Filing Regarding Entry of Default by Clerk |
| 9/20/2007 | Pl | 1.40 | 1.40 | 220.00 | $308.00 | | | Preparation of 55(b) / Memo to File Regarding Same |
| 9/21/2007 | Pl | 3.50 | 3.50 | 220.00 | $770.00 | | | Preparation of Documents Regarding Motion for Default Judgment |
| 9/24/2007 | Pl | 1.80 | 1.80 | 220.00 | $396.00 | | | Review of Correspondence from P. Gilbert (x3) / Preparation of Affidavit for T. Montemore Regarding Related Exhibits for Motion for Default Judgment |
| 9/25/2007 | Pl | 0.60 | 0.60 | 220.00 | $132.00 | | | Review and Revision of Affidavit of T. Montemore / Correspondence Exchange Regarding Same |
| 9/25/2007 | Pl | 2.30 | 2.30 | 220.00 | $506.00 | | | Review of Correspondence from P. Gilbert / Preparation of Memorandum of Law in Support of Motion for Judgment by Default |
| 9/26/2007 | Pl | 1.80 | 1.80 | 220.00 | $396.00 | | | Review of Correspondence from P. Gilbert / Review and Revision of Motion for Summary Judgment / Calculation of Attorneys' Fees and Costs / Preparation of Affidavit and Exhibits Regarding Same |
| **Totals** | | 14.40 | 14.40 | | $3,168.00 | | | |

### Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 9/13/2007 | $325.00 | 7100 | Service of Process |
| **Totals** | $325.00 | | |

### Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 6/18/2007 | SMC | 1.50 | 1.50 | 220.00 | $350.00 | | | Preparation of Complaint |

Status  Current Period    Post Date  07/03/2007    Entry Date  06/18/2007    Original Post Period  7    Original Post Year  2007

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 7/3/2007 | SMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Court Order |
| 7/6/2007 | SMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Preparation of Memo to Client regarding Status of Litigation |
| 7/31/2007 | SMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Preparation of Correspondence to Legal Errands regarding Status of Service |

# Jennings Sigmond, P.C.
## Time And Expense Details

| PTINIT | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| IUPAT Industry Pension Fund | | 26574 | Design Technologies | Sigmond, Richard B. |

Beginning To End

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 9/6/2005 | SMC | 3.50 | 3.50 | 200.00 | $700.00 | | | Preparation for Teleconference<br>Phone Conference with Attorney C. Krieg and Vincent Zappala<br>Phone Conference with T. Montemore<br>Review of Correspondence from Attorney C. Krieg<br>Preparation of Letter to Attorney C. Krieg |

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 09/30/2005 | Current Period | 09/06/2005 | 6 | 2005 |

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 9/7/2005 | SMC | 0.90 | 0.90 | 200.00 | $180.00 | | | Review of Correspondence from P. Gilbert<br>Phone Conference from T. Montemore<br>Review of Updated breakdown<br>Phone Conference with V. Zappia re: Reports<br>Preparation of Letter to P. Gilbert |
| 9/8/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Documents from T. Montemore |
| 9/13/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence from Attorney C. Krieg |
| 9/13/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Letter to G. Meyers |
| 9/14/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence from G. Meyers |

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 09/14/2005 | Original Period Unlocked | 09/14/2005 | 6 | 2005 |

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 9/15/2005 | SMC | 0.30 | 0.30 | 200.00 | $60.00 | | | Phone Conference with C. King |
| 9/22/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Correspondence from Attorney C. Krieg<br>Preparation of Letter to T. Montemore |
| 9/26/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Letter to C. Krieg |
| 9/27/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Correspondence from Attorney C. Krieg |
| 10/4/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Letter to T. Montemore<br>Review of Correspondence from Attorney C. Krieg |
| 9/5/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Phone Conference with T. Montemore and Attorney C. Krieg<br>Preparation of Letter to T. Montemore and P. Gilbert |
| 10/11/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence from Attorney C. Krieg |
| 10/13/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Letter to T. Montemore<br>Review of Correspondence from P. Gilbert |
| 10/4/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence from Local Counsel |
| 10/20/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Letter to G. Meyers regarding Local Counsel Bill |
| 10/25/2005 | SMC | 0.10 | 0.10 | 200.00 | $25.00 | | | Preparation of Letter to T. Montemore |

Case 1:07-cv-01130-CKK   Document 9-8   Filed 11/07/2007   Page 3 of 15

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

| Billed Time Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 11/14/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from Attorney C. Krieg<br>Preparation of Letter to G. Meyers |
| 11/15/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Phone Conference with T. Montemore<br>Review of Documents |
| 11/17/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Documents<br>Preparation of Letter to T. Montemore<br>Review of Correspondence from T. Montemore |
| 11/21/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Preparation of Letter to G. Meyers<br>Review of Correspondence from Attorney C. Krieg |
| 12/5/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Krieg<br>Review of Correspondence from Attorney C. Krieg |
| 12/12/2005 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Preparation of Letter to Attorney C. Krieg |
| 12/13/2005 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Preparation of Letter to Attorney C. Krieg and T. Montemore |
| 1/8/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Preparation of G. Meyers Letter |
| 1/23/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Update Litigation Status Report |
| 1/26/2006 | SMC | 0.40 | 0.40 | 200.00 | $80.00 | | Review of Correspondence from V. McGlone and T. Montemore<br>Phone Conference with T. Montemore |
| 1/30/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Update Litigation Tracking Report<br>Review of Correspondence to Attorney C. Krieg |
| 2/6/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Krieg |
| 2/13/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Preparation of Letter to G. Meyers |
| 2/17/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Krieg |
| 3/8/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Krieg |
| 3/9/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from Attorney C. Krieg |
| 3/13/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from T. Montemore<br>Review of Correspondence from Attorney C. Krieg |
| 3/15/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from P. Gilbert<br>Review of Correspondence from T. Montemore |
| 3/16/2006 | SMC | 1.00 | 1.00 | 200.00 | $200.00 | | Phone Conference with Attorney C. Krieg (2x)<br>Review of Correspondence from P. Gilbert<br>Preparation of Letter to G. Meyers |
| 3/17/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Documents<br>Memo to File<br>Review of Correspondence from Attorney C. Krieg |
| 3/21/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Krieg |
| 3/22/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Preparation of Letter to T. Montemore |
| 3/23/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from T. Montemore<br>Phone Conference with P. Gilbert<br>Review of Correspondence from P. Gilbert |
| 4/18/2006 | SMC | 0.30 | 0.30 | 200.00 | $60.00 | | Review of Correspondence from T. Montemore<br>Preparation of Correspondence from Attorney C. Krieg and T. Montemore<br>Phone Conference with T. Montemore |
| 4/19/2006 | SMC | 0.10 | 0.10 | 200.00 | $25.00 | | Preparation of Letter to T. Montemore |

Case 1:07-cv-01130-CKK   Document 9-8   Filed 11/07/2007   Page 4 of 15

# Jennings Sigmond, P.C.

## Time And Expense Details

| Date | Timekeeper | Hours Worked | Bill Hours On | Rate | Amount | Task | Activity | Narrative |
|------|-----------|--------------|---------------|------|--------|------|----------|-----------|
| 4/24/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence from Attorney C. Krieg |
| 4/25/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Letter to T. Montemore / Phone Conference with R. Moore / Phone Conference with P. Gilbert |
| 4/26/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Correspondence from Attorney C. Krieg / Preparation of Letter to B. Moore |
| 5/1/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Correspondence to B. Moore / Review of Correspondence from Attorney C. Krieg |
| 5/9/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Correspondence from B. Moore / Review of Correspondence from Attorney C. Krieg |
| 5/15/2006 | SMC | 0.80 | 0.80 | 200.00 | $160.00 | | | Review of Correspondence from Attorney C. Krieg / Preparation of Correspondence to Attorney C. Krieg / Phone Conference with P. Gilbert |
| 5/18/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Phone Conference with Attorney B. Soloman / Preparation of Correspondence to Attorney C. Krieg / Review of Correspondence from Attorney C. Krieg |
| 5/22/2006 | SMC | 0.40 | 0.40 | 200.00 | $80.00 | | | Preparation of Correspondence to B. Moore / Review of Correspondence from B. Moore / Review of Correspondence from T. Montemore / Phone Conference with T. Montemore / Preparation of Correspondence to Attorney C. Krieg |
| 5/31/2006 | SMC | 0.40 | 0.40 | 200.00 | $80.00 | | | Preparation of Correspondence to Attorney C. Krieg / Review of Correspondence |
| 6/1/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Correspondence to T. Montemore and P. Gilbert |
| 6/5/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Phone Conference with Attorney B. Soloman |
| 6/7/2006 | SMC | 0.80 | 0.80 | 200.00 | $160.00 | | | Review of Correspondence from Attorney C. Krieg / Review of Court Order from NY |
| 6/8/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Phone Conference with T. Montemore |
| 6/19/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | | Review of Correspondence Attorney C. Krieg |
| 6/29/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Memo to Client regarding Status of Litigation |
| 7/5/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | | Preparation of Correspondence to Funds regarding Billing |
| 7/7/2006 | SGR | 0.40 | 0.40 | 200.00 | $80.00 | | | Review of Documents / Phone Conference with Attorney B. Solomon |
| 7/11/2006 | SGR | 0.20 | 0.20 | 200.00 | $40.00 | | | Phone Conference with R. Moore |
| 7/14/2006 | SGR | 0.80 | 0.80 | 200.00 | $160.00 | | | Review of Correspondence from Attorney B. Soloman regarding Audit / Review of Documents |
| 7/16/2006 | SGR | 0.10 | 0.10 | 200.00 | $20.00 | | | Review and Revision of Letter to Attorney B. Soloman regarding Audit / Letter to Attorney B. Soloman |
| 7/17/2006 | SGR | 0.30 | 0.30 | 200.00 | $60.00 | | | Review of Correspondence from R. Moore / Review and Revision of Letter to Attorney B. Solomon |

# Jennings Sigmond, P.C.
## Time And Expense Details

Report ID: OT2025 - 13772
Monday, October 15, 2007                                                                                    Printed By   MHT
                                                                                                              Page        4

Beginning To End

| Billed Time Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 7/31/2006 | SGR | 0.10 | 0.10 | 200.00 | $20.00 | | Phone Conference with R. Moore |
| 8/1/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Phone Conference with B. Moore |
| | | | | | | | Phone Conference with B. Soloman, Esquire |
| 8/3/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Phone Conference with B. Soloman, Esquire |
| 8/3/2006 | SMC | 0.30 | 0.30 | 200.00 | $60.00 | | Review of Correspondence T. Montemore |
| | | | | | | | Preparation of Correspondence C. Krieg, Esquire |
| | | | | | | | Phone Conference with T. Montemore |
| 8/4/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence T. Montemore |
| 8/7/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Phone Conference with B. Moore |
| 8/18/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence Attorney C. Krieg |
| 10/2/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Phone Conference with Attorney C. Krieg |
| 10/3/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from Attorney C. Krieg |
| | | | | | | | Preparation of Correspondence to T. Montemore and P. Gilbert |
| 10/11/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from Attorney C. Krieg |
| | | | | | | | Preparation of Correspondence to P. Gilbert and T. Montemore |
| 10/12/2006 | SMC | 0.30 | 0.30 | 200.00 | $60.00 | | Preparation of Correspondence to G. Meyers |
| | | | | | | | Review of Correspondence from Attorney C. Krieg |
| 10/16/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Preparation of Correspondence to G. Meyers |
| 10/17/2006 | SMC | 0.60 | 0.60 | 200.00 | $120.00 | | Phone Conference with Attorney C. Krieg regarding Local Counsel Billing |
| | | | | | | | Review of Correspondence from Attorney C. Krieg |
| | | | | | | | Preparation of Correspondence to G. Meyers |
| 10/31/2006 | SMC | 0.40 | 0.40 | 200.00 | $80.00 | | Review of Correspondence from Attorney C. Krieg |
| | | | | | | | Preparation of Correspondence to T. Montemore |
| | | | | | | | Phone Conference with T. Montemore |
| 11/2/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from T. Montemore |
| 11/3/2006 | SMC | 0.20 | 0.20 | 200.00 | $40.00 | | Review of Correspondence from B. Moore |
| | | | | | | | Phone Conference with T. Montemore |
| 11/3/2006 | SMC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from B. Moore |
| | | | | | | | Preparation of Correspondence to Attorney C. Krieg |
| 11/15/2006 | SMC | 0.70 | 0.70 | 200.00 | $140.00 | | Phone Conference with T. Montemore |
| | | | | | | | Phone Conference with B. Soloman (2x) |
| | | | | | | | Phone Conference with B. Moore (2x) |
| | | | | | | | Phone Conference with Attorney C. Krieg |
| | | | | | | | Preparation of Correspondence of T. Montemore |
| | | | | | | | Review of Correspondence from Attorney B. Soloman |
| | | | | | | | Review of Draft Stipulation |
| | | | | | | | Preparation of Correspondence to Attorney C. Krieg |

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-001 RBS
Bill date   11/10/04

International Painters and Allied Trades
Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006

Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 10/20/04 | SGR | Review of Correspondence from Fund regarding New Delinquency Case | | | |
| | | Review of Documents | | | |
| | | Preparation of Litigation Memo | .40 hrs | 200 /hr | 80.00 |
| 10/21/04 | SMC | Legal Research, Dunn and Bradstreet Report | | | |
| | | Phone Conference with DC 711 | | | |
| | | Phone Conference with Business Agent, Walt | 1.10 hrs | 200 /hr | 220.00 |
| 10/22/04 | SMC | Phone Conference with DW1976 regarding Status of Company | | | |
| | | Phone Conference to Walt at DC711 regarding Status of Company | | | |
| | | Legal Research | | | |
| | | Review of Documents | | | |
| | | Preparation of Complaint | | | |
| | | Left Message for V. Zappola, Owner of Company | 1.70 hrs | 200 /hr | 340.00 |
| 10/25/04 | SGR | Review of Complaint | .20 hrs | 200 /hr | 40.00 |
| 10/26/04 | SMC | Review and Revision of Complaint | | | |
| | | Prepare Documents for Filing | .20 hrs | 200 /hr | 40.00 |

TOTAL FEES                                          $   720.00

DISBURSEMENTS

| | | | | |
|---|---|---|---|---|
| 10/28/04 | 7100 | FILING FEE | | 150.00 |

TOTAL DISBURSEMENTS                                 $   150.00

BILLING SUMMARY

TOTAL FEES                                          $   720.00

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-004 RBS
Bill date  02/10/05

International Painters and Allied Trades
  Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006


Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

| Date | | Description | Hours | Rate | | Amount |
|------|---|-------------|-------|------|---|--------|
| 01/04/05 | SMC | Letter to P. Gilbert | | | | |
| | | | .10 hrs | 200 | /hr | 20.00 |
| 01/05/05 | SMC | Preparation of Motion for Default Judgment | | | | |
| | | | 1.10 hrs | 200 | /hr | 220.00 |
| 01/06/05 | SMC | Preparation of Motion for Default Judgment | | | | |
| | | | 2.50 hrs | 200 | /hr | 500.00 |
| 01/07/05 | SMC | Review and Revision of Motion for Default Judgment | | | | |
| | | | 1.30 hrs | 200 | /hr | 260.00 |
| 01/07/05 | SGR | Review and Revision of Motion for Default Judgment | | | | |
| | | | .50 hrs | 200 | /hr | 100.00 |
| 01/10/05 | SMC | Review and Revision of Motion for Default Judgment | | | | |
| | | | .70 hrs | 200 | /hr | 140.00 |
| 01/10/05 | EBM | Review of File regarding Treatment for Liquidated Damages vs. Late Fees | | | | |
| | | | .10 hrs | 200 | /hr | 20.00 |

```
                                                    -----------
          TOTAL FEES                          $        1,260.00
```

DISBURSEMENTS

```
                                                    -----------
          TOTAL DISBURSEMENTS                 $             .00
```

BILLING SUMMARY

```
          TOTAL FEES                          $        1,260.00
                                                    -----------
          TOTAL CHARGES FOR THIS BILL         $        1,260.00
```

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-005 RBS
Bill date   03/10/05

International Painters and Allied Trades
  Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006


Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

02/10/05 SMC   Review of Status of Default Motion
                                    .10 hrs  200  /hr      20.00
02/17/05 SMC   Review of Status of Default Motion on PACER
                                    .10 hrs  200  /hr      20.00
                                                       -----------
              TOTAL FEES                       $          40.00

DISBURSEMENTS

                                                       -----------
              TOTAL DISBURSEMENTS               $            .00

BILLING SUMMARY

              TOTAL FEES                        $          40.00
                                                       -----------
              TOTAL CHARGES FOR THIS BILL       $          40.00

REPRINT OF BILLED DETAILS (as billed)

```
                 Bill number PTINTF-26574-008 RBS
                     Bill date   06/10/05
```

International Painters and Allied Trades
   Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006


Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 05/24/05 SMC | Review of Executed Default Judgment | | | | |
| | | .10 hrs | 200 | /hr | 20.00 |
| 05/24/05 CTM | Review of Electronic Court Documents regarding Judgment | | | | |
| | | .10 hrs | 70 | /hr | 7.00 |
| 05/25/05 SMC | Preparation of Letter to T. Montemore and P. Gilbert | | | | |
| | | .10 hrs | 200 | /hr | 20.00 |
| | | | | | ----------- |
| | TOTAL FEES | | $ | | 47.00 |

DISBURSEMENTS

| | | | | |
|---|---|---|---|---|
| 05/31/05 FAX | Fax Charges | | | 1.50 |
| | | | | ----------- |
| | TOTAL DISBURSEMENTS | $ | | 1.50 |

BILLING SUMMARY

| | | | |
|---|---|---|---|
| | TOTAL FEES | $ | 47.00 |
| | TOTAL DISBURSEMENTS | $ | 1.50 |
| | | | ----------- |
| | TOTAL CHARGES FOR THIS BILL | $ | 48.50 |

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-009 RBS
Bill date   07/11/05

International Painters and Allied Trades
    Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006


Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

06/10/05 SMC  Update Litigation Report
                                     .40 hrs  200  /hr      80.00
06/27/05 SMC  Preparation of Letter to Court Requesting
              Registered Judgment
                                     .20 hrs  200  /hr      40.00
                                                       -----------
              TOTAL FEES                      $          120.00

DISBURSEMENTS

06/23/05 7100 Certified Judgment                          19.50
                                                       -----------
              TOTAL DISBURSEMENTS              $           19.50

BILLING SUMMARY

              TOTAL FEES                       $         120.00

              TOTAL DISBURSEMENTS              $          19.50
                                                       -----------
              TOTAL CHARGES FOR THIS BILL      $         139.50

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-010 RBS
Bill date   08/10/05

International Painters and Allied Trades
   Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006


Design Technologies   (26574)

FOR PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 07/11/05 SMC | Review of Correspondence from P. Gilbert | | | | |
| | Review of Certified Judgment | | | | |
| | Legal Research regarding Local Counsel | | | | |
| | Phone Conference with Attorney C. Krieg | | | | |
| | Preparation of Letter to Attorney C. Krieg | | | | |
| | | .40 hrs | 200 | /hr | 80.00 |
| 07/27/05 SMC | Review of Correspondence from G. Meyers | | | | |
| | Review of Documents | | | | |
| | | .20 hrs | 200 | /hr | 40.00 |
| | | | | ----------- | |
| | TOTAL FEES | | $ | | 120.00 |

DISBURSEMENTS

| | | | |
|---|---|---|---|
| 07/31/05 COPY | Photocopies | | 13.58 |
| 07/31/05 FAX | Fax Charges | | 5.25 |
| | | ----------- | |
| | TOTAL DISBURSEMENTS | $ | 18.83 |

BILLING SUMMARY

| | | |
|---|---|---|
| TOTAL FEES | $ | 120.00 |
| TOTAL DISBURSEMENTS | $ | 18.83 |
| | ----------- | |
| TOTAL CHARGES FOR THIS BILL | $ | 138.83 |

REPRINT OF BILLED DETAILS (as billed)

Bill number PTINTF-26574-011 RBS
Bill date   09/12/05

International Painters and Allied Trades
    Industry Pension Fund
Gary J. Meyers, Administrator
1750 New York Avenue, N.W. #501
Washington, DC 20006

Design Technologies    (26574)

FOR PROFESSIONAL SERVICES RENDERED

| Date | | Description | | | |
|---|---|---|---|---|---|
| 08/01/05 | SMC | Review of Correspondence from G. Meyers | | | |
| | | | .10 hrs | 200 | /hr | 20.00 |
| 08/02/05 | SMC | Phone Conference with Attorney C. Krieg (2x) | | | |
| | | Preparation of Letter to P. Gilbert (3x) | | | |
| | | Phone Conference with P. Gilbert | | | |
| | | Review of Documents | | | |
| | | Calculate Attorneys' Fees and Costs | | | |
| | | | 1.50 hrs | 200 | /hr | 300.00 |
| 08/03/05 | SMC | Phone Conference with Attorney C. Krieg (2x) | | | |
| | | Phone Conference with T. Montemore and Attorney C. Krieg | | | |
| | | Review of Correspondence from P. Gilbert and T. Montemore | | | |
| | | Review of Correspondence from P. Gilbert and V. McGlone | | | |
| | | Review of Correspondence from T. Montemore | | | |
| | | | 1.50 hrs | 200 | /hr | 300.00 |
| 08/08/05 | SMC | Phone Conference with B. Moore | | | |
| | | Review of Documents | | | |
| | | Review of Correspondence from P. Gilbert | | | |
| | | | .40 hrs | 200 | /hr | 80.00 |
| 08/16/05 | SMC | Phone Conference with Attorney C. Krieg, Local Counsel | | | |
| | | Preparation of Letter to T. Montemore and P. Gilbert | | | |
| | | Phone Conference with B. Moore, Auditor | | | |
| | | | .80 hrs | 200 | /hr | 160.00 |
| 08/18/05 | SMC | Preparation of Letter to G. Meyers | | | |
| | | | .20 hrs | 200 | /hr | 40.00 |
| 08/22/05 | SMC | Review of Correspondence from T. Montemore | | | |
| | | Phone Conference with T. Montemore | | | |
| | | Preparation of Letter to B. Moore, Auditor | | | |
| | | Review of Correspondence from B. Moore | | | |
| | | | .50 hrs | 200 | /hr | 100.00 |
| 08/23/05 | SMC | Phone Conference with T. Montemore | | | |
| | | Phone Conference with Attorney c. Krieg | | | |

```
REPRINT OF BILLED DETAILS (as billed)
PTINTF-26574-011 RBS                                    Page    2
```

```
                   Preparation of Letter to B. Moore, Auditor
                   Review of Correspondence from P. Gilbert
                   Preparation of Letter to P. Gilbert
                                    1.00 hrs  200  /hr    200.00
08/29/05 SMC  Review of Correspondence from B. Moore
              Phone Conference with V. Zappola of Company
              Phone Conference with T. Montemore
              Review of Correspondence from T. Montemore (2x)
                                     .80 hrs  200  /hr    160.00
08/30/05 SMC  Review of Correspondence from T. Montemore
              Preparation of Letter to T. Montemore
              Preparation of Letter to V. Zappola
              Phone Conference with V. Zappola
                                    1.00 hrs  200  /hr    200.00
                                                      -----------
              TOTAL FEES                       $         1,560.00

DISBURSEMENTS

08/31/05 FAX  Fax Charges                                    6.00
                                                      -----------
              TOTAL DISBURSEMENTS               $            6.00

BILLING SUMMARY

              TOTAL FEES                        $        1,560.00

              TOTAL DISBURSEMENTS               $            6.00
                                                      -----------
              TOTAL CHARGES FOR THIS BILL       $        1,566.00
```

REPRINT OF BILLED DETAILS (as billed)
PTINTF-26574-ALL RBS                                              Page    1


            REPORT TOTALS

            TOTAL FEES                                      4,068.00

            TOTAL DISBURSEMENTS                               490.18
                                                           -----------
                                                             4,558.18

# Associate Hourly Billing Rates by Region



| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| Middle Atlantic | $195 | $273 |
| South Atlantic | $190 | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

Source: Altman Weil Survey of Law Firm Economics
2005 Edition

See following page for states included
in each region.



EXHIBIT
5

# Census Regions and Divisions of the United States





# Median Hourly Billing Rates
## Litigation Specialties

**Top Five Hourly Rates**

**Equity and Non-Equity Partners**

Antitrust: $380
IP: $330
Tax: $325
Employee Benefits: $305
Criminal: $305

Source: Altman Weil Survey of Law Firm Economics 2005 Edition



**OSBA**

# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

## Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.

1



EXHIBIT

## IV.    BILLING RATES AND PRACTICES

A.    Takeaways.

1.    The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%*.

2.    Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

3.    Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

4.    *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

5.    Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

6.    Fifty-six percent of respondents had *not changed* their rates in one year or more.

7.    When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

8.    *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

9.    Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

B.    Implications.

1.    There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

2.    Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

## V.    ATTORNEY TIME ALLOCATIONS

A.    Takeaways.

1.    The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

*Economics of Law Practice in Ohio* • *3*

## Law Firm Billing Rates and Billing Practices

### 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21**     **2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 195 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| **All Attorneys** | 530 | $182 | $150 | $175 | $210 | $300 |

Exhibit 22    2004 HOURLY BILLING RATES BY PRIMARY
FIELD OF LAW AND PRACTICE CLASS

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 83 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

**Exhibit 26**    DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR
ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 27    DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE

| Legal Assistant Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2 | 3-6 | 7-20 | 21+ | All Firms |
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | 10.0 | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

Exhibit 28    LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004

| Billing Method for Legal Assistants | Firm Size (Number of Attorneys) | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |